**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dawn McPhail,<br><br>           Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>           Defendant. | No. CV-20-00271-TUC-DCB (EJM)<br><br>**ORDER** |

Plaintiff, Dawn McPhail, seeks judicial review of a final decision by the Commissioner of Social Security, pursuant to 42 U.S.C. § 405(g), that she is not disabled. The Court remands this case to the ALJ for further administrative proceedings to reassess Dr. Hatch's opinion and continue the five-step sequential evaluation process.

On August 21, 2020, the case was referred to a Magistrate Judge for a Report and Recommendation (R&R) regarding the merits of the Plaintiff's claims, pursuant to LRCiv. 72 and 28 U.S.C. § 636(b)(1). (Order (Doc. 14)). On November 24, 2021, the Magistrate Judge issued a R&R (Doc. 32) which concludes that the case should be remanded to the ALJ for further development of the record because the ALJ failed to articulate specific and legitimate reasons to discount the treating source opinion of Dr. Ray Hatch. The ALJ's error impacted her Residual Functional Capacity (RFC) assessment for the Plaintiff and the hypotheticals posed to the Vocational Expert (VE), which resulted in her conclusion the Plaintiff is not disabled.

The Commissioner objects to the Magistrate Judge's findings and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b). Where a party files an objection, the District Court makes a *de novo* determination upon the record specific to the objection, *Hunt v. Pliler*, 336 F.3d 839, 844 (9th Cir. 2003) (citing Fed.R.Civ.P. 72(b)), meaning the Court considers the matter anew, the same as if it had not been heard before and as if no decision previously had been rendered, *Ness v. Comm'r of Internal Revenue Service*, 954 F.2d 1495, 1497 (9th Cir. 1992). This Court's obligation is to arrive at its own independent conclusion about those portions of the Magistrate Judge's findings or recommendations to which objections are made. *United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989).

<u>The R&R: Remand for further administrative proceedings</u>

The Magistrate Judge reviewed the Commissioner's five-step sequential process evaluating Plaintiff's claims of disability. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Heckler v. Campbell*, 461 U.S. 458, 460–462 (1983). Disabled means the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 20 C.F.R. § 404.1505.

To establish disability the claimant bears the burden of showing she (1) is not working; (2) has a physical or mental impairment that alone or together is severe; (3) the impairment meets or equals the requirements of a listed impairment; and (4) the claimant's RFC precludes him from performing his past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, she does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Here, the Magistrate Judge concluded that the ALJ found the Plaintiff was not disabled at step five based on her erroneous RFC assessment and hypotheticals given to the VE.

The ALJ found the Plaintiff suffers from severe physical and mental impairments: degenerative disc disease of the lumbar and cervical spine, depressive disorder, anxiety disorder, and post-traumatic stress disorder. Because the ALJ concluded that her severe impairments did not meet the listed criteria, the ALJ had to determine the Plaintiff's RFC before completing the step four analysis that she could not perform past work, and concluding at step five that the Plaintiff could perform other work, and therefore was not disabled. The Magistrate Judge found error in the RFC, the VE hypotheticals, and the nondisability determination based on both.

The ALJ classified the Plaintiffs past work as a security guard as light and semiskilled and her work as a corrections officer as medium and semiskilled. Light work involves lifting no more than 20 lbs., with frequent lifting or carrying of 10 lbs. and requires a good deal of walking or standing, or when it involves sitting most of the time there is some pushing and pulling of arm or leg controls.

The ALJ offered the hypotheticals to the VE, with those highlighted below that she applied to establish the Plaintiff's RFC, as follows:

> 1. **Assume she is limited to the light exertional level of work and will be off-task <u>less than</u> 10 percent of the workday.** The VE testified such a person could do Plaintiff's past work as a security guard and a corrections officer at the light level.
>
> 2. **Add, a limitation from frequent interaction with others**. The VE testified such a person could not perform Plaintiff's past work but could perform other jobs such as housekeeper, office helper, and parking lot cashier.
>
> 3. Reduce the exertional level to sedentary, which means not lifting more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; involves sitting, with occasional walking and standing necessary in carrying out job duties. The VE testified that such an individual could do the jobs of document preparer, table worker/inspector, and final assembler.
>
> 4. Add, a limitation of being off-task <u>more than</u> 10 percent of the workday. The VE testified that there would be no work at any level.

On cross-examination, the VE testified that if a person was <u>limited to no more than 2 hours standing or walking and no more than 3 hours sitting, it would eliminate all work</u>

or if an individual was limited to no contact with the public or coworkers and would meet with their supervisor or manager weekly, it would eliminate all work.

The Plaintiff challenged the Defendant's decision denying her claim of disability for four reasons: 1) the ALJ introduced ambiguity in the RFC finding that is not resolved by VE testimony; 2) the ALJ failed to articulate specific and legitimate reasons to discount the treating source statement of Dr. Ray Hatch; 3) the ALJ failed to articulate germane reasons to discount the statement of treating N.P. Beth Newhouse; and 4) the ALJ failed to articulate clear and convincing reasons to discount Plaintiff's subjective symptom testimony. The Commissioner responded that the ALJ properly evaluated Plaintiff's subjective symptom testimony by detailing the record, properly evaluated the medical source opinion evidence, and reasonably determined Plaintiff's RFC. Therefore, there is no ambiguity between the ALJ's RFC finding and the VE's testimony.

The Magistrate Judge found that the ALJ failed to provide specific and legitimate reasons to discount treating physician Dr. Hatch's opinion, and this error impacted the ALJ's assessment of Plaintiff's RFC and the hypotheticals posed to the VE. "Consequently, the error was not harmless because it ultimately impacted the ALJ's step five nondisability finding." (R&R (Doc. 32) at 16.) Without reaching all the arguments of error, the Magistrate Judge recommended remanding the case for the Plaintiff's subjective symptom testimony to be reassessed in light of the record as a whole.

On June 26, 2017, Plaintiff's treating physician, Dr. Hatch, prepared a Medical Opinion Re: Ability to do Physical Activities form, which noted that he saw the Plaintiff every 3 months for sacroiliitis, depression, and anxiety.  "He opined Plaintiff could walk ½ to 1 block, sit and stand for 15–30 minutes at a time and less than 2 hours total in an 8-hour workday, needed to shift positions at will, and needed to take unscheduled breaks at least every 30 minutes. Plaintiff could occasionally lift up to 10 pounds and had significant limitations in repetitive reaching, handling, and fingering. She was likely to have good days and bad days and would be absent from work more than twice a month." (R&R (Doc. 32) at 4) (emphasis added).

This conflicted with the state examining physician, Dr. Hassman, who examined the Plaintiff earlier in the year, on February 8, 2017, and opined that the Plaintiff reported low back pain, frequent diarrhea or constipation, anxiety, and depression. She had aching pain in her back since injuring it in 2011 or 2012 but denied pain radiating down her legs or any numbness, tingling, or weakness of the legs. Examination was generally normal with minimal stiffness with kneeling, mild tenderness over the sacroiliac joints, and complaints of pain at the end range of lumbar flexion when reaching for her toes. []" (R&R (Doc. 32) at 8.) He noted "unremarkable physical exam of the lumbar spine with mild tenderness over the sacroiliac joints" and concluded Plaintiff's "conditions would not impose limitations for 12 continuous months." *Id.*

The Court adopts the record as stated by the Magistrate Judge (R&R (Doc. 32) at 2-11), which supports the opinion of Dr. Hatch rather than Dr. Hassman because the record in its entirety reflects that over time, especially from 2016 through 2018, the Plaintiff was consistently and continually treated for lower back pain, including: prescription narcotic pain medication which had to be increased in strength by 2018; referrals to pain management specialists and physical therapy, and undergoing a lower back procedure and ablation in 2018. While these treatments produced some relief, she at all times continued to need treatment for lower back pain from her medical providers, first Dr. Hatch and later Banner Health. Like their records, the physical therapy records reflect some improvement at different times, but overall, no significant relief and that from early 2017 to 2018, her condition deteriorated. (R&R (Doc. 32) at 5-6.) It is simply not true to state, as the ALJ did, that there is no supporting evidence for Dr. Hatch's opinion regarding the degree of impairment related to Plaintiff's degenerative disc disease.

While not relied on by the Magistrate Judge for recommending remand, the Court notes that the ALJ likewise discounted the opinion given by Plaintiff's treating mental health provider, N.P. Newhouse, at CODAC. On July 3, 2017, she completed a Medical Opinion Questionnaire (Mental Impairments) form, noting Plaintiff's treatment at CODAC, including her two interactions with Plaintiff for diagnostics and medication

management. In describing the Plaintiff's diagnoses of major depressive disorder and generalized anxiety disorder, N.P. Newhouse described anxiety as a long-term condition and duration of the depressive disorder unknown. *But see* (Hatch treatment records (R&R (Doc. 32 at 3 (8/26/16 describing excessive stress but ok from depression standpoint; 1/17/17 venlafaxine prescribed for depression; 3/17/17 reporting depression better and venlafaxine continued). In July of 2017, N.P. Newhouse opined the following:

> Plaintiff had "good" ability to adhere to basic standards of neatness and cleanliness, remember work-like procedures, understand, remember, and carry out simple instructions, maintain attention for 2-hour segments, maintain regular attendance and be punctual, sustain an ordinary routine without special supervision, make simple work-related decisions, and be aware of normal hazards. [] She had "fair," meaning seriously limited but not precluded, ability to interact appropriately with the public, maintain socially appropriate behavior, use public transportation, work in coordination or proximity with others without being distracted, ask simple questions, accept instructions and respond to criticism, get along with co-workers or peers, deal with normal work stress, understand, remember, and carry out detailed instructions, set realistic goals, and deal with the stress of skilled and semi-skilled work. [] Her ability to travel in unfamiliar places, complete a normal workday and workweek without interruption from psychologically based symptoms, perform at a consistent pace, and respond appropriately to changes in a routine work setting was "poor or none." [] N.P. Newhouse indicated that Plaintiff would be absent from work more than twice a month.

(Admin. Record (Doc. 20-10) at 120-122.)

The ALJ gave little weight to this opinion from Plaintiff's treating practitioner because the ALJ found it was inconsistent with the record. The ALJ relied on the psychological consultative examiner Dr. Rohen's opinion, which was that the Plaintiff had a mild limitation sustaining concentration and persistence and interacting with others. The ALJ gave this opinion significant weight because it was based on the administration of the Mini Mental Status Exam.

The ALJ summarized the Plaintiff's mental health record as showing: "other than a short, acute increase in symptoms, that although the claimant reports she isolates herself she is able to interact well with others and had sufficient concentration to perform well on mental status exams. The ALJ's reference to the "short acute increase in symptoms" refers to Plaintiff's attempted suicide and related hospitalization on April 6 through April 10, 2017, at University Medical Center and follow-up admission and treatment at Palo Verde

Behavioral health from April 10 to April 14, 2017. The ALJ's conclusion ignores the treatment records from both CODAC and Dr. Hatch reflecting Plaintiff's long-term treatment, including prescription medication, for depression and anxiety.

The Court notes that the opinions from both the consulting examining doctors, Dr. Hassman and Dr. Rohen, were given in February 2017, which was before Plaintiff was involved in a car accident in March, and subsequently treated for increased lower back pain as reflected in the medical records for 2017-2018. *Compare* (Decision (Doc. 20-3) at 32 (citing Hassman exam as reflecting no reported tingling); (R&R (Doc. 32) at 5) (referencing PT record reporting tingling), *see same* (Hassman record reflecting controlled with medication); (referencing increased hydrocodone and referral to pain management).

Plaintiff's treating physician, Dr. Hatch's opinion was given on June 26, 2017. Similarly, N.P Newhouse's opinion was given July 3, 2017, after Plaintiff's April suicide attempt, hospitalization, inhouse treatment at Palo Verde Behavioral Health, and follow-up treatment at CODAC, which formed the background for Newhouse's treatment records.

The Magistrate Judge concluded that the ALJ "cherry picked" the record to conclude it did not support the treating physician opinion from Dr. Hatch. *See* (R&R (Doc. 32) at 18) (citing *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (explaining the ALJ may not manufacture a conflict between treating providers by cherry-picking the evidence to support a finding of non-disability; *see also Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 1989) (rejecting "germane reasons" for discounting practitioner's opinion because the ALJ manufactured a conflict by identifying a few reports of improvement and then asserting, without considering totality of treatment records, that provider's opinion merited little weight).

Objections to the R&R

The Commissioner argues that after *de novo* review this Court must find there is substantial evidence to support the ALJ's finding that the Plaintiff is not disabled. The ALJ did not err in discounting Hatch's opinion that the Plaintiff is disabled because it is inconsistent with the record. "Notably," Dr. Hatch's list of Plaintiff's impairments was

- 7 -

Sacralitis [sic], Depression and Anxiety, not degenerative disc disease of the cervical or lumbar spine. The Commissioner's objection does not explain the significance between the two diagnoses. Google reflects sacroiliitis is a painful inflammation of the sacroiliac joint (SI) and a common source of gluteal and lower back pain. The Court notes that the medical records reflect administration of SI injections on 1/4/2016, 4/26/2016, 10/17/2016, 6/15/2017, 9/11/2017, and 12/13/2017. (R&R (Doc. 32) at 1-3.)

The Commissioner argues the ALJ correctly found that Dr. Hatch's opinion was unsupported by objective evidence- namely clinical and diagnostic findings in the record, which is a valid reason for assigning less weight to a treating doctor's opinion. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (explaining that an ALJ can reasonably discount a treating physician's opinion that is inadequately supported by clinical findings) (citing *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)). "Under the regulations, objective evidence consists of medical signs, and laboratory findings, whereas "symptoms" are one's own description of a physical or mental impairment." (Objection (Doc. 33) at 3 (citing 20 C.F.R. §§ 404.1512(b)(1), 404.1528(a), (b)).

To prevail on this argument, the Commissioner must establish that Plaintiff's description of her symptoms was not entirely credible. When a claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate" the claimant's allegations. *Lester*, 81 F.3d at 834 (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir.1991)). "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing.'" *Id.* (quoting *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir.1989)). It is not enough to make a general finding that the Plaintiff's reported symptoms are not credible. The ALJ must identify what symptom testimony is not credible and what evidence undermines the claimant's complaints. *Id.* (citing *Dodrill v. Shalala*, 12 F.3d 915,

918 (9th Cir.1993); *Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 584 (9th Cir.1988) (*Varney I* )).

In *Bray*, the ALJ found the claimant's characterization of her symptoms unreliable. In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and her conduct, daily activities, and work record, etc., among other factors, which in *Bray* included smoking in the face of alleged debilitating shortness of breath; she was able to lead an active lifestyle, including: cooking, cleaning, walking dogs, driving to appointments, recent work as a care giver, and while she reported being wheezy when engaging in heavy exertion she also reported her COPD was doing fine.

The part of *Bray* relevant to this Court's review was the ALJ's evaluation of claimant's treating physician's opinion, which introduced a prescription of limited lifting, standing or walking, and work activities to four hours per day, five days a week. The treating physician's prescription contrasted with the DDS physician evaluation that claimant Bray was capable of doing much more. In *Bray*, the ALJ gave the treating physician's opinion "little weight" for several reasons, including that it was based on Bray's subjective characterization of her symptoms. The Court found that because the ALJ determined that Bray's description of her limitations was not entirely credible, it was reasonable to discount the physician's prescription of limitations that was based on those less than credible statements. *Bray*, 554 F.3d at 1226–29.

In this case, the ALJ discounted Plaintiff McPhail's statements of impairment symptoms relied on by Dr. Hatch because her testimony regarding her daily activities was contrary to her asserted limitations. According to the ALJ, the Plaintiff's testimony was "that she remains independent in all daily activities, manages her own self-care and helps care for her granddaughter []. The ALJ noted Plaintiff reported to consultative examiner Noelle Rohen, Ph.D. that she does her own laundry, grocery shopping, manages money, and is able to drive alone to do these things []. The Commissioner argues that, therefore, the ALJ did discuss Dr. Hatch's opinion regarding unscheduled breaks or absenteeism because she rejected those limitations based on the record as a whole, and in particular, the

Plaintiff's daily activities and statements made to Dr. Rohen." (Objection (Doc. 33) at 4-5.) The ALJ, accordingly, supported her finding that Plaintiff was able to sustain work activity at a reduced level of light exertional work based on claimant's self-reported daily activities.

The suggestion that Plaintiff's own testimony is contrary to Dr. Hatch's opinions of the Plaintiff's limitations ignores Plaintiff's testimony that she was able to take care of her granddaughter as a baby but as the baby got older and heavier it was more difficult to lift and hold her. The Plaintiff, who lives with her daughter, did not provide day care for her granddaughter; the child went to a babysitter down the street. (TR (Doc. 20-3) at 72-73). Likewise, the daily activities she testified she performed were not contrary to Dr. Hatch's opinions that she could not do synonymous work-like activities consistently over an 8-hour workday without taking frequent breaks or having unscheduled absenteeism. Plaintiff testimony was essentially that she helped when she could and is consistent with Dr. Hatch's opinion that she would likely have good days and bad days. Plaintiff's daily activities are not clear and convincing evidence that Plaintiff's symptom testimony is not credible. Therefore, the record taken as a whole is not contrary to Dr. Hatch's conclusion that the Plaintiff would have difficulty performing work activities over the course of the workday without taking frequent breaks and would be absent from work more than twice a month.

Additionally, the Commissioner argues that the ALJ did address Dr. Hatch's assessment regarding time off task by including a limitation in the VE hypothetical and corresponding RFC of less than 10% off task during an 8-hour day. (Objection (Doc. 33) at 4-5.) It was Dr. Hatch's opinion that Plaintiff could only sit and stand for 15–30 minutes at a time and less than 2 hours total in an 8-hour workday, needed to shift positions at will, needed to take unscheduled breaks at least every 30 minutes, and would be off work more than twice a month. If this is considered an "off-task" assessment, it is more in keeping with the VE hypothetical of "off task more than 10 percent of the workday," which the ALJ rejected. N.P. Newhouse's opinion included what is more accurately described as a time-off task assessment, which was: Plaintiff could maintain attention for 2-hour segments and

had poor to no ability to complete a normal workday and workweek without interruption from psychologically based symptoms, perform at a consistent pace, and respond appropriately to changes in a routine work setting, and would be absent from work more than twice a month.

This Court's *de novo* review of the record finds that the ALJ weighted opinion evidence by whether it was supported by objective medical evidence. Plaintiff's physical examinations by her treating and nontreating examining doctors were generally described as normal or unremarkable, but for the medically determinable physical impairment degenerative disc disease of the lumbar and cervical spine. Weighting opinion evidence more heavily when supported by this objective medical evidence of normalcy skewed the record towards a finding of not disabled and runs the risk of violating the prohibition against discounting symptom testimony once there is objective medical evidence of a severe impairment, without finding by clear and convincing evidence that the Plaintiff is not credible.

For example, the ALJ gave partial weight to Dr. Hassman's opinion that Plaintiff had no exertional limitations as inconsistent with the record showing degeneration in the spine on objective imaging but found Dr. Hassman's opinion that she has no sitting or postural limitations consistent with it. Relying on Hassman's opinion, the ALJ then gave little weight to Dr. Hatch's opinion of disability as being inconsistent with the record.

Similarly, the ALJ gave Dr. Rohn's mental health opinion significant weight because it was based on the administration of a mental health exam as compared to giving little weight to treating N.P. Newhouse's opinion, which was based on Plaintiff's treatment at CODAC in follow-up to her suicide attempt and history of anxiety and depression.

The Magistrate Judge is correct that Dr. Hatch's opinion is only inconsistent with the medical record to the extent the record is cherry-picked by the ALJ with an emphasis on objective medical evidence. The ALJ ignored the general rule, that "'more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.'" (R&R (Doc. 32) at 16 (citing *Garrison*, 759 F.3d at 1012 (quoting

*Lester*, 81 F.3d at 830)). "'Courts afford the medical opinions of treating physicians superior weight because these physicians are in a better position to know plaintiffs as individuals, and because the continuity of their treatment improves their ability to understand and assess an individual's medical concerns.'" *Id.* at 17 (quoting *Potter v. Colvin*, 2015 WL 1966715, at *13 (N.D. Cal. Apr. 29, 2015)).

When the ALJ does not give a treating physician's opinion controlling weight, the ALJ must evaluate any medical opinion according to the requirements set out in 20 C.F.R. § 404.1527(c), which assesses the treating relationship between the Plaintiff and her practitioners. The Magistrate Judge correctly found the ALJ failed to determine the weight to afford Dr. Hatch's opinion, pursuant to this standard, which required her to consider: (1) the frequency of examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the consistency of the opinion and the record as a whole; (4) whether the doctor is a specialist; and (5) other factors that would support or contradict the opinion. (R&R (Doc. 32) at 20.) "'Generally, the longer a treating source has treated [the claimant] and the more times [the claimant has] been seen by a treating source, the more weight [the Commissioner] will give to the source's medical opinion.'" *Id.* (quoting 20 C.F.R. § 404.1527(c)(2)(i)). The Court agrees with the Magistrate Judge that the record reflects Plaintiff's treatment by Dr. Hatch from 2011 to 2017 had these earmarks for weighting his opinion as a better assessment of Plaintiff's conditions and functional limitations than examining state agency physicians who never treated her.

Conclusion

The Court agrees that the ALJ erred by failing to set forth specific and legitimate reasons supported by substantial evidence to assign little weight to Dr. Hatch's opinion and failed to address the factors set out in 20 C.F.R. § 404.1527(c), particularly the frequency of examination and the length, nature, and extent of the treatment relationship. "'This error is not harmless because it affected the ALJ's RFC assessment and the ultimate nondisability finding at step five.'" (R&R (Doc. 32) at 20.) Accordingly, the Court adopts

the Magistrate Judge's recommendation that this matter should be remanded for further administrative proceedings to continue the five-step sequential evaluation process, including reassessing Dr. Hatch's opinion and properly weighting opinion evidence between treating and nontreating practitioners, and assessing Plaintiff's residual functional capacity based on the record as a whole.

**Accordingly,**

**IT IS ORDERED** that the Report and Recommendation (Doc. 32) is adopted by the Court as its findings of fact and conclusions of law.

**IT IS FURTHER ORDERED** that this matter is remanded to the Commissioner for further administrative proceedings in accordance with this Order.

**IT IS FURTHER ORDERED** that the Unopposed Motion to Extend the Time to file a Response/Reply to the Objection (Doc. 34) is GRANTED, accordingly, the Response/Reply filed on January 3, 2022, is timely.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter Judgment accordingly.

Dated this 28th day of February, 2022.

Honorable David C. Bury
United States District Judge